UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EVA KRAVAR,

                Plaintiff,

   - against -

TRIANGLE SERVICES, INC. ,

                Defendant.

1:06-cv-07858-RJH

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

      This employment discrimination action arises out of defendant Triangle Services, Inc.'s ("Triangle's") decision not to offer plaintiff Eva Kravar a daytime cleaning position at 731 Lexington Avenue, the new headquarters of Bloomberg L.P.  Ms. Kravar, a sixty-two year old immigrant from the Slovak Republic, worked for more than twenty-five years as a daytime office cleaner at 110 East 59th Street, Bloomberg's former headquarters.  When Bloomberg moved to 731 Lexington Avenue, Triangle replaced its workforce and declined to offer Ms. Kravar a daytime position at the new building.  Ms. Kravar contends that by doing so, Triangle illegally discriminated against her on the basis of her disability and national origin, and retaliated against her for filing a discrimination charge with the Equal Employment Opportunity Commission.

      On March 27, 2009, the Court granted in part and denied in part Triangle's motion for summary judgment.  *Kravar v. Triangle Services, Inc.*, No. 1:06-cv-07858-RJH-FM, 2009 WL 805807 (S.D.N.Y. Mar. 27, 2009).  Triangle now moves to compel arbitration in light of the Supreme Court's recent decision in *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009), which held that "a collective-bargaining agreement that clearly

and unmistakably requires union members to arbitrate [Age Discrimination in Employment Act] claims is enforceable as a matter of federal law." *Id.* at 1474. Because this case falls within an exception to the enforceability of a union-negotiated arbitration agreement expressly noted in *Pyett*, the motion will be denied.

## BACKGROUND

Ms. Kravar filed suit against Triangle on September 29, 2006. *Kravar*, 2009 WL 805807, at *3. As amended, Ms. Kravar's complaint alleged that Triangle discriminated against her on the basis of her national origin (Slovakian), failed to reasonably accommodate her disability (limitations resulting from abdominal surgery), and retaliated against her for filing a claim with the Equal Employment Opportunity Commission. *See id.* The complaint additionally asserted a claim under the New York City Human Rights Law based on these same three theories. *See id.*

Ms. Kravar is covered by a collective bargaining agreement ("CBA") entered into by the Service Employees International Union, Local 32BJ, AFL-CIO (the "union") and The Realty Advisory Board on Labor Relations, Inc. (the "realty board"). (*See* Reinharz Aff. Ex. 2, Apr. 22, 2009.) Article XIX of the CBA broadly prohibits discriminatory employment practices, but also requires union members to submit all claims of discrimination to binding arbitration under the agreement's grievance and dispute resolution procedures:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any other characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code . . . or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and

> arbitration procedure (Articles VII and VIII) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

(*Id.* at 88.) Article VII creates a two-step grievance procedure for perceived violations of the anti-discrimination provision: "The grievance may first be taken up between the representative of management and a representative of the Union. If it is not settled, it may be filed for arbitration." (*Id.* at 22.) Ms. Kravar contends, and Triangle does not dispute, that "grievances that have not been resolved through the grievance procedure . . . may only be taken to arbitration 'at the request of either Local 32BJ or the affected employer.'" (Kravar Mem. 3 (quoting Br. of Serv. Employees Int'l Union, Local 32BJ, as Amicus Curiae in Supp. of Resp'ts, at 6, *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009) (No. 07-581), *available at* 2008 WL 2724312); *see also* CBA 22 ¶ 4 ("All Union claims *are brought by the Union alone* and no individual shall have the right to compromise or settle any claim without the written permission of the Union." (emphasis added)).) In other words, the parties do not dispute that an individual union member does not have an unfettered right to demand arbitration of a discrimination claim; to do so, she must present the claim to the union, which "may" demand arbitration, presumably if it finds the claim colorable. (CBA 22.)

Before any substantial proceedings had taken place in this case, Triangle moved on May 11, 2007, to compel arbitration. The Court denied the motion, relying on the Second Circuit's decisions in *Rogers v. New York University,* 220 F.3d 73 (2d Cir. 2000), and *Pyett v. Pennsylvania Building Co.*, 498 F.3d 88 (2d Cir. 2007), *rev'd*, 129 S. Ct. 1456 (2009). On February 19, 2008, the Supreme Court granted certiorari in *Pyett*. *14 Penn Plaza LLC v. Pyett*, 128 S. Ct. 1223 (2008).

While *Pyett* was being briefed and argued at the Supreme Court, the parties here engaged in extensive discovery. At its close, Triangle moved for summary judgment. (*See* Def.'s Mem. of Law in Supp. of S.J., Aug. 15, 2008.) On March 27, 2009, the Court granted in part and denied in part Triangle's motion. *Kravar*, 2009 WL 805807, at \*10. The Court found that while the record justified trial of Ms. Kravar's claims for disability discrimination, there was insufficient evidence of intentional discrimination or retaliation to justify trial of the remaining claims. *See id.* at \*4-9.

Five days later, the Supreme Court reversed the Second Circuit's decision in *Pyett*, which involved an arbitration clause identical in all material respects to the one Ms. Kravar is subject to. Interpreting the plain language of the National Labor Relations Act, 29 U.S.C. § 151 (2006) (the "NLRA"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 (the "ADEA"), the Court held that "the CBA's arbitration provision must be honored unless the ADEA itself removes this particular class of grievances from the NLRA's broad sweep." *Pyett*, 129 S. Ct. at 1465. The Court explained that "[t]he decision to resolve ADEA claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace age discrimination; it waives only the right to seek relief from a court in the first instance." *Id.* at 1469.

The Court, however, expressly declined to consider whether "the CBA operates as a *substantive* waiver of [plaintiff-respondents'] ADEA rights because it not only precludes a federal lawsuit, but also allows the Union to block arbitration of these claims." *Id.* at 1474 (emphasis added). While "a substantive waiver of federally protected civil rights will not be upheld," *id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 & n.19 (1985), and *Gilmer v.*

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991)), plaintiff-respondents failed to brief whether their union prevented them from arbitrating their discrimination claims. *Pyett*, 129 S. Ct. at 1474.  Accordingly, the Court remanded the case for further proceedings consistent with its opinion.  *Id.*; *see also id.* at 1481 (Souter, J., dissenting) ("On one level, the majority opinion may have little effect, for it explicitly reserves the question whether a CBA's waiver of a judicial forum is enforceable when the union controls access to and presentation of employees' claims in arbitration, which 'is usually the case[.]'" (citations omitted)).

By order dated April 3, 2009, the Court stayed proceedings in this case and requested supplemental briefing on the effect of *Pyett*.  By May 6, 2009, the issue was fully briefed.

## DISCUSSION

In view of the Supreme Court's analysis in *Pyett*, 129 S. Ct. at 1474, and *Gilmer*, 500 U.S. at 29, there is little question that if Ms. Kravar's union prevented her from arbitrating her disability discrimination claims, the CBA's arbitration provision may not be enforced as to her.  The Court finds that this in fact occurred.

In connection with this motion, Ms. Kravar submitted a sworn declaration stating that her union declined to prosecute her claims for disability discrimination.[1]  Ms. Kravar states that she told her union representative, Jeff Abramson, that she wanted to arbitrate her disability claims.  (Kravar Decl. ¶ 10, Apr. 21, 2009.)  When she did so, "Mr.

---

[1] Ms. Kravar first raised this argument in response to Triangle's May 2007 motion to compel arbitration.  (*See* Kravar Mem. 14, June 8, 2007 ("[T]he 32-BJ arbitration clause puts the employee at the mercy of his or her union, which may be indifferent or even hostile to the employee's claim of individual discrimination").)  The Court did not reach the argument at that time.  *See Kravar*, 509 F. Supp. 2d at 409.

Abramson laughed and told me that I could not do so because the union was most likely to dismiss my complaint." (*Id.*)  At his deposition, Mr. Abramson was unable to confirm or deny that this exchange occurred.  He testified that he "d[id] not recall" speaking with Ms. Kravar or Triangle about Ms. Kravar's medical condition, and that Ms. Kravar's grievance was dismissed prior to arbitration because Triangle offered Ms. Kravar a permanent night position.  (Abramson Dep. 35, 37, Stewart Decl. Ex. B, Apr. 22, 2009.)  Triangle contends that "[a]t no point . . . has [Ms. Kravar] claimed through the grievance procedure that her rights under the Americans With Disabilities Act, or any other statute, were violated."  (Triangle Mem. 7.)  But the only evidence it cites is a grievance form, apparently filled out by Mr. Abramson, that does not describe which if any claims Ms. Kravar demanded to arbitrate.  (Reinharz Reply Aff. Ex. 3, May 6, 2009).[2]  The current record is sparse, but it only supports a single conclusion:  The CBA here operated to preclude Ms. Kravar from raising her disability-discrimination claims in *any* forum.  As

---

[2] The "comments" field of this form reads:

> Member states that the employer has offered a night position due to tenant move outs.  Working on the night shift creats [sic] an undue hardship.

The "claim" field reads:

> Offer her a day position based on her seniority.

A field labeled "Delegate's Report" reads:

> - member was bumped out of 110E59th (Bloomberg) because of move-outs
>
> - Mgt. afforded member a perm Job at night (see attached letter); member claimed she can't work nights & wants a day job.  Mgt. doesn't have any jr day positions available.  - Also mem. brought a doctor's note that she can only do light duty wk.  (See attached letter)

Finally, the form contains a box labeled, "I recomend [sic] this complaint be submitted to . . . arbitration."  The box is not checked.

such, the CBA operated as a waiver over Ms. Kravar's substantive rights, and may not be enforced. *See Pyett*, 129 S. Ct. at 1474; *Gilmer*, 500 U.S. at 29.

Triangle suggests the union's actions are beside the point, because *it* is willing to arbitrate Ms. Kravar's disability discrimination claims. Specifically, Triangle notes that it has offered "to have this matter pursued through the grievance procedure of the [CBA]" (Triangle Mem. 5), and that Ms. Kravar "is free to file whatever claim she chooses under the applicable statutes and the case will be heard before a neutral arbitrator." (*Id.* at 8.) But this confuses the issue. The arbitration provision that the Court must enforce is the one the union and the realty board entered into, not a hypothetical agreement in which the employer's rather than the union's consent is critical. "Absent some ambiguity in the agreement, . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

## CONCLUSION

Triangle's motion to compel arbitration **[55]** is denied. The Court's prior stay is lifted. The parties are directed to submit a joint pretrial order by June 15, 2009.

SO ORDERED.

Dated: New York, New York
May 1**ᐣ**, 2009

Richard J. Holwell
United States District Judge